3:22-mj-00091

| | |
|---|---|
| DISTRICT OF OREGON ) | |
| ) ss. | AFFIDAVIT OF JEFFREY THOMAS |
| COUNTY OF MULTNOMAH ) | |

## Affidavit in Support of a Criminal Complaint

I, Jeffrey Thomas, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am currently employed as a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been so employed since 2012. In that capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 801, *et. seq*. My current assignment is with the DEA Salem Resident Office, investigating controlled substances crimes. My training and experience includes completion of the sixteen (16) week DEA Basic Agent Training course at the Justice Training Center in Quantico, Virginia. This training focused on the identification of controlled substances; how controlled substances are consumed; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the laws relating to the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate drug violations. I am familiar with investigations of drug trafficking organizations, including methods of importation and distribution of controlled substances. I have assisted with multiple investigations, including nine wiretap investigations, and cases involving organizations trafficking several different controlled substances to include heroin, methamphetamine, cocaine, counterfeit oxycodone pills, and marijuana. These investigations have resulted in the seizure of controlled substances as well as United States currency and the prosecution of many defendants.

## Purpose of Affidavit

2. This affidavit is submitted to support a criminal complaint and arrest warrant for **Guillermo Alexis Huerta Lopez**, a Hispanic male, date of birth xx/xx/1992 (hereinafter "**HUERTA**"), for engaging in the distribution of 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(vi).

3. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

## Description of Confidential Source ("CS")

4. In 2019, CS approached officers and volunteered to provide information about the operations of a separate drug trafficking organization operating in Salem, Oregon and elsewhere. CS is working in exchange for monetary consideration and immigration benefits. Officers have found CS to be credible and reliable. CS's criminal record includes a felony conviction for illegal entry into the United States. CS also has multiple prior arrests, including a felony arrest for possession of a controlled substance. CS has one prior misdemeanor arrest for a crime of dishonesty—Giving False Information to Police. SA Carr and TFO Zuniga spoke to CS regarding CS's arrest for giving false information to police. CS reported that CS had previously been arrested for illegal entry and feared deportation if CS provided police with CS's real name. Therefore, CS initially gave law enforcement a false name and date of birth, but eventually gave CS's true identity to officers. CS was recently convicted of the following misdemeanor crimes –

**Affidavit of DEA Special Agent Jeffrey Thomas**                                                                 **Page 2**

DUII, Interfering with a Peace Officer, and Driving with a Suspended License as a result of prior arrests. I have spoken to and worked with CS, and I believe CS to be credible and reliable.

5. As part of CS's work with officers, DEA Task Force Officer (TFO) Zuniga assigns phone numbers to CS to be used for recording communications with target subjects of investigations. CS is aware that the communications to/from these phone numbers are recorded by officers. TFO Zuniga is able to send/receive text messages from/to these phone numbers on behalf of CS.

6. Beginning in 2021, I have been involved in an investigation targeting Juan Luis Osuna Hernandez (referred to herein as "OSUNA"). Through this investigation we have developed evidence that OSUNA oversees the distribution of methamphetamine and fentanyl by a couple of couriers in Salem, Oregon, and that OSUNA used telephone 541-900-2432 (herein "2432 Phone) to arrange drug deals. I believe that Guillermo Alexis Huerta Lopez (HUERTA) is one of OSUNA's couriers.

7. On April 3, 2022, at approximately 6:35 p.m., at the direction of agents, CS made an outgoing call to OSUNA at 2432 Phone. In this call the two parties greeted and the CS asked, "I was going to see if you had one thousand of the little blue ones? The ones for the headache?" OSUNA replied, "Ah yes, give me a chance. What do you think about tomorrow? Because right now the young guy always goes up. But tomorrow he will be here." The conversation continued and OSUNA told the CS that they should talk the following day when OSUNA was done with work around five or six in the evening. CS later said, "…sounds good, so we can do it tomorrow?" OSUNA replied, "For tomorrow." The two parties finished the call agreeing to speak the following evening.

**Affidavit of DEA Special Agent Jeffrey Thomas**               **Page 3**

8.      In this call I believe that the CS asked OSUNA for a thousand fentanyl tablets ("one thousand of the little blue ones") and that OSUNA confirmed that he could provide them the following evening ("Yes…what do you think about tomorrow?"), and that they should talk again around five or six the following night to coordinate the deal.

9.      On April 4, 2022, at 5:20 p.m., at agents' direction the CS made an outgoing recorded call to OSUNA at 2432 Phone. OSUNA answered and said he was on his way home from work and told the CS that he would call the CS back in a while to arrange the deal. At 6:19 p.m. the CS received an incoming call from OSUNA at 2432 Phone. In this call the two greeted and OSUNA asked, "Are you ready?" The CS replied with a question, "You are ready?" OSUNA said, "Yes. Send me the location. My relative is going to go here." The CS agreed to this and OSUNA said, "I'm going to give him your number so you guys can call each other when he's there." The CS replied, "Sounds good." And they ended the call. A few minutes later SA Mendoza, posing as CS, sent a text message to 2432 Phone that gave the address of the meet location "Walmart 1940 SE Turner Road

10.     OSUNA arranged for a courier, later identified as HUERTA, to meet the CS at the Walmart located at 1940 turner Road SE, Salem, Oregon. At the arranged time and location, on April 4, 2022, HUERTA arrived and delivered approximately a thousand tablets suspected to contain fentanyl to the CS. These tablets weighed approximately 160 grams. SA Mendoza had a good view of HUERTA's face when HUERTA entered the CS' vehicle. SA Mendoza identified HUERTA by comparison with an Oregon Department of Motor Vehicles (DMV) photograph of HUERTA. Later, the CS identified the same DMV photo of HUERTA as the person that delivered the tablets to the CS.

11. After the deal was completed SA Mendoza and I followed the CS to a neutral location and debriefed the CS. The CS showed SA Mendoza where a small Ziploc type plastic bag containing small blue tablets was resting on the center console. SA Mendoza then took custody of the blue tablets. The CS said that HUERTA gave the baggie of tablets to the CS in exchange for $4,000.00 in government funds. The CS said that HUERTA had begun counting the money and eventually asked the CS if there was $4,000.00, and that the CS confirmed that it was $4,000.00. The CS said that HUERTA told the CS to call HUERTA when the CS needed any other controlled substances. I then showed the CS the Oregon DMV photo of HUERTA and the CS confirmed it was the person that delivered the suspected fentanyl tablets to the CS.

12. SA Mendoza and I then processed the blue tablets into evidence. I observed that the tablets were small round light blue and were marked with an "M" on one side and were marked "30" on the other side. We did not conduct a field test of the tablets. However, based on my training and experience, I recognize that these tablets look the same as tablets we have purchased in other investigations that tested positive for fentanyl, a schedule II controlled substance, at a DEA laboratory. SA Mendoza and I later sent the tablets to a DEA laboratory for analysis and those results are forthcoming.

13. I know that drug traffickers are increasingly selling little round blue counterfeit prescription pills that are manufactured with fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide), a Schedule II controlled substance. These counterfeit pills are designed to replicate real 30 mg Oxycodone Hydrochloride pills, which are round, blue in color, and stamped with an "M" and "30" on them. Drug dealers regularly counterfeit these pills and, while attempting to replicate the round shape, the blue color, and the stamp of "M" and "30," they are instead manufacturing these pills with fentanyl as the active ingredient. The counterfeit

pills, while looking roughly similar to the real thing can often be distinguished based upon their appearance. The counterfeit M30 pills often have a different shade of blue than the real thing and sometimes they are even manufactured in different colors, the edges of the pills and the stamped impressions are often rough and lack the precision of a real 30 mg Oxycodone Hydrochloride pill, and sometimes the counterfeit pills will crumble easily under pressure. I have seen and seized tens of thousands of these counterfeit M30 pills and lab reports have confirmed the presence of fentanyl within many of them. I know a user amount of a counterfeit M30 pill is often one pill, which can either be ingested or burned and inhaled. I know some addicts will smoke up to 10 to 30 pills a day. I know that a person possessing approximately 1,000 suspected fentanyl pills does not possess those pills for personal use but rather such a quantity indicates that they are possessed for purposes of further distribution.

## Conclusion

14. Based on the foregoing, I have probable cause to believe, and I do believe, that **Guillermo Alexis Huerta Lopez** committed the crime of engaging in the distribution of 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B)(vi). I therefore request that the Court issue a criminal complaint and arrest warrant for **Guillermo Alexis Huerta Lopez.**

///

///

///

///

///

**Affidavit of DEA Special Agent Jeffrey Thomas**                                                                                              **Page 6**

15. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
JEFFREY THOMAS
Special Agent
Drug Enforcement Administration

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 4:26 pm a.m./p.m. on 18 day of May, 2022.

_____
HONORABLE YOULEE YIM YOU
UNITED STATES MAGISTRATE JUDGE